## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
BUZZFEED, INC., *et al.*,                  )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )        Civil Action No. 17-0900 (ABJ)
                                          )
DEPARTMENT OF JUSTICE,                     )
                                          )
                    Defendant.            )
_____)

### MEMORANDUM OPINION

Plaintiffs BuzzFeed, Inc. ("BuzzFeed"), a media corporation, and two of its journalists, Peter Aldhous and Charles Seife, have sued the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking documents from the Federal Bureau of Investigation ("FBI") concerning its aerial surveillance program. In particular, plaintiffs request flight logs and evidence logs associated with twenty-seven planes, identified by their unique tail numbers and the locations where they were allegedly sighted: the Washington, D.C./Baltimore area, California, and New York. Although the agency acknowledges the general existence of the aerial surveillance program, it refuses to confirm or deny whether records exist for these particular aircraft, asserting that merely stating whether the records exist is itself covered by a FOIA exemption. This is commonly known as a "*Glomar* response" to a FOIA request, and it can be overcome by a showing that the information has already been officially disclosed.[1]

_____

[1]     The term "*Glomar* response" originates from the Central Intelligence Agency's ("CIA") refusal to confirm or deny the existence of records in response to a FOIA request relating to "the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'" *Roth v. DOJ*, 642 F.3d 1161, 1171 (D.C. Cir. 2011), quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981).

The parties have filed cross-motions for summary judgment, and the Court will grant summary judgment in favor of DOJ and deny plaintiffs' motion since it finds that the agency's invocation of the FOIA exemptions was proper and that the particular information sought has not been officially acknowledged.  At bottom, the Court agrees that simply revealing whether or not the FBI has records concerning any of these particular airplanes would be enough to let the cat out of the bag.  Disclosing this information – which has never been officially acknowledged by the FBI before – would interfere with law enforcement proceedings, and disclose law enforcement techniques in a way that would risk circumvention of the law.

## BACKGROUND

Plaintiffs submitted a FOIA request to the FBI on March 4, 2016 seeking to examine the government's aerial surveillance practices.  Ex. A to First Hardy Decl. [Dkt. # 9-1] ("FOIA Request").  The request sought records on "recent surveillance or monitoring flights," and it identified twenty-seven planes presumed to be "associated with FBI surveillance operations."[2]  *Id.*  The following twenty-seven planes were listed by their tail numbers as "recently observed" in the "greater DC/Baltimore area," "California," and the "greater New York area":

**[T]he greater DC/Baltimore area**:

N208EB, N467TS, N539MY, N610AG, N629ET, N632MR, N632TK, N728MP and N859JA

**California**:

N143GS, N168DK, N301A, N404KR, N514NY, N610AG, N632TK, N657TP, N879WM and N956D

**[G]reater New York area:**

---

2       Two aircraft, N632TK and N610AG, were listed twice in plaintiffs' FOIA request.  *See* FOIA Request.

>       N232DW, N236KS, N461AJ, N520EP, N629BA, N687RT, N910LF,
>       N912EX, N916WR, and N6971A.

*Id.* For each of these aircraft, plaintiffs requested the "flight logs" and "evidence logs" from August 15, 2015 through the present. *Id.*

After acknowledging receipt of the request, the FBI informed plaintiffs that due to unspecified "unusual circumstances" there would be a delay in processing their request. Def.'s Statement of Material Facts Not In Dispute [Dkt. # 9] ("Def.'s SOF") ¶ 3; Pls.' Statement of Material Facts Not In Dispute [Dkt. # 13-1] ("Pls.' SOF") ¶ 1.

On May 2, 2016, the FBI issued its *Glomar* response, asserting that it could neither confirm nor deny the existence of records for the specified aircraft pursuant to FOIA Exemption 7(E) since disclosure of this information would reveal law enforcement techniques and procedures that would risk circumvention of law enforcement efforts. Def.'s SOF ¶ 4; Pls.' SOF ¶ 1. Plaintiffs administratively appealed this decision, but the agency affirmed the *Glomar* response. Def.'s SOF ¶¶ 7–8; Pls.' SOF ¶ 1.

Having exhausted their administrative remedies, plaintiffs filed this lawsuit on May 15, 2017, seeking to compel the agency to turn over the requested records. Compl. [Dkt. # 1]. Thereafter, the government moved for summary judgment on the basis that its *Glomar* response was justified under FOIA Exemption 7(E), and it also invoked Exemption 7(A) for the first time, arguing that acknowledging the existence of these records could interfere with pending law enforcement investigations, should any exist. Def.'s Mot. for Summ. J. [Dkt. # 9]; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 9] ("Def.'s Mot.").

In response, plaintiffs opposed defendant's motion and cross-moved for summary judgment. Pls.' Cross-Mot. for Summ. J. [Dkt. # 12]; Mem. of P. & A. in Opp. to Def.'s Mot. & In Supp. of Pl.'s Mot for Cross-Mot. for Summ. J. [Dkt. # 12] ("Pls.' Cross-Mot."). They maintain

that FOIA Exemption 7(A) does not apply because the agency failed to identify "specific proceedings" that would be compromised. Pls.' Cross-Mot. at 10. Plaintiffs also argue that the agency's right to rely on a *Glomar* response under Exemption 7(E) has been waived by the "abundance of public information linking these aircraft to FBI missions," which reduces or eliminates the risk of circumvention of law enforcement efforts. *Id.* at 1, 11–14.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Id.*, at 247–48. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.,* 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, the

agency bears the ultimate burden of proof. *See DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). The Court may award summary judgment based solely on information provided in an agency's affidavits or declarations that identify "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003). When an agency withholds documents or parts of documents, it must

explain what it is withholding and the statutory exemptions that apply.  *See Vaughn v. Rosen,* 484 F.2d 820, 825–28 (D.C. Cir. 1973).

In some instances, however, the government may refuse to even confirm or deny the existence of responsive records.  *Wolf v. CIA.*, 473 F.3d 370, 374 (D.C. Cir. 2007).  This is called a "*Glomar* response."  Such a response is appropriate when revealing the very fact that an agency possesses responsive records would itself "cause harm cognizable under [a] FOIA exception."  *Id.*, quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

To justify a *Glomar* response, the agency must supply the court with a detailed affidavit that explains why it cannot provide a substantive response pursuant to a FOIA exemption.  *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012).  To determine whether a *Glomar* response "fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases."  *Wolf*, 473 F.3d at 374.

## I.   The FOIA exemptions were properly invoked.

### A.   Exemption 7(A)

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

To justify the withholding of records under Exemption 7(A), DOJ must "demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'"  *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) ("*CREW*"), quoting *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

In support of its motion for summary judgment, the FBI submitted three declarations: two of the declarations are public, *see* Decl. of David M. Hardy [Dkt. # 9-1] ("First Hardy Decl."); Second Decl. of David M. Hardy [Dkt. # 16-1] ("Second Hardy Decl."), and one was filed *ex-parte, in camera*, with the Court's permission. Min. Order (Sept. 15, 2017); Notice of *In Camera, Ex Parte Submission* [Dkt. # 11]; *In Camera, Ex Parte* Decl. of Supervisory Special Agent [Dkt. # 11-1] (redacted).

In its public declaration, the FBI described the nature of the program and laid out the potential consequences of publicly revealing the existence of responsive records.

> The FBI has asserted a *Glomar* response because acknowledging or denying the existence of records in response to Plaintiff's FOIA request is tantamount to confirming or denying ownership of specific aircraft. Therefore, the confirmation of responsive records, should they exist, could interfere with pending law enforcement investigations. *See* 5 U.S.C. § 552(b)(7)(A). It is known the FBI utilizes aerial surveillance in conducting criminal and national security investigations. Though the FBI has confirmed its use of aerial surveillance, . . . [it] has not released specific information regarding tail numbers, or the flight and evidence logs associated with specific aircraft.

First Hardy Decl. ¶ 19.

The declarant then described the harm that would flow from acknowledging or denying ownership of particular aircraft:

> For the FBI to acknowledge responsive records, even if withheld entirely pursuant to a FOIA exemption (b)(7)(A), would not only confirm ownership of the aircraft, it would also disclose the FBI's investigative interest in particular geographic areas. This acknowledgment would alert the public of the FBI's interest in particular flight patterns, and afford criminals and terrorists the opportunity to alter their behavior and location, interfering with pending enforcement proceedings. To confirm the existence of records, would be equivalent to the FBI acknowledging there is an active investigation along specific flight patterns. Conversely, if the FBI confirmed no responsive records existed, then the acknowledgment would reveal the aircraft are, in fact, not owned by the FBI and that such flight patterns are potentially free from FBI aerial surveillance. . . . Thus, the FBI is asserting a (b)(7)(A) *Glomar* in response to Plaintiff's FOIA request

> because acknowledging or denying the existence of records associated with
> specific tail numbers could have a devastating impact on current criminal
> and national security investigations.

*Id.*

In sum, the FBI argues that acknowledging the existence of responsive records would mean revealing its ownership and use of the aircraft in particular locations. This would enable individuals involved in criminal activity to track planes, learn where the FBI is conducting an investigation, and alter their behavior to avoid detection or interrupt or impede ongoing law enforcement investigations.[3] And denying the existence of records could signal to criminals that certain planes are not FBI planes and certain routes are free from FBI surveillance.

The D.C. Circuit has held that a law enforcement agency cannot justify withholding under Exemption 7(A) unless the material withheld relates to a "concrete prospective law enforcement proceeding." *CREW*, 746 F.3d at 1097, quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008). Relying on this precedent, plaintiffs contend that defendant's invocation of Exemption 7(A) is improper because the agency failed to identify "specific proceedings" that would be compromised. Pls.' Cross-Mot. at 10–11; Pls.' Reply in Supp. of Pls.' Cross-Mot. [Dkt. # 17] ("Pls.' Cross-Reply") at 3.

Plaintiffs have lifted the phrase from the *CREW* opinion out of context. In that portion of the opinion dealing with Exemption 7(A), the Court addressed the assertion of the exemption by the Department of Justice in connection with records related to two sets of proceedings: the sentencing hearings of several named individuals, and "all related criminal investigations." *CREW*, 746 F.3d at 1097. It stated:

> The first set of proceedings does not justify withholding because the sentencing
> hearings – and appeals . . . are no longer "pending or reasonably anticipated."

---

3       Plaintiffs noted that websites such as Flightradar24.com allow the public to track planes in real time by merely using their N-numbers. Pls.' Cross-Mot. at 2.

> Exemption 7(A) is temporal in nature . . . . We therefore "require a law enforcement agency invoking the exception to show that the material withheld 'relates to a concrete prospective law enforcement proceeding.'" *Juarez v. Dep't of Justice,* 518 F.3d 54, 58 (D.C. Cir. 2008), quoting *Bevis v. Dep't of State,* 801 F.2d 1386, 1389 (D.C. Cir. 1986). The proceeding must remain pending at the time of our decision, not only at the time of the initial FOIA request.

*Id.*

In that portion of its opinion, the Court of Appeals was not discussing the level of specificity that must be provided concerning the investigation that could be affected but rather, it was emphasizing that closed cases "are not proceedings with which disclosure may interfere." *Id.* Here, the declarant has plainly stated that merely revealing whether these records exist could compromise "pending" or "current" law enforcement investigations. *See* First Hardy Decl. ¶ 19 (averring that confirming whether responsive records exist "could have a devastating impact on *current* criminal and national security investigations") (emphasis added); *see also* Second Hardy Decl. ¶ 7 ("To confirm or deny [p]laintiffs' claims would harm *pending* law enforcement proceedings . . .") (emphasis added); *see also* Second Hardy Decl. ¶ 8 (asserting that plaintiffs' assumption that the flight logs they requested are "historical" and not related to "ongoing investigations" is unfounded). Thus, this case does not present the problem identified in *CREW* to which the quoted excerpt pertains.[4]

---

4    *CREW* does go on to find problems with the second set of proceedings identified – "all related criminal investigations" – but there again, the Court's stated concern was the "considerable uncertainty about whether a criminal investigation in fact continues to this day" given the amount of time that had gone by, and the inability of counsel to point to any ongoing matter. 746 F. 3d at 1098.  That uncertainty is absent here.  And the Court reiterated, "[t]o be sure, an ongoing criminal investigation typically triggers Exemption 7(A): '[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'"  *Id.*, quoting *Juarez,* 518 F.3d at 59. This principle has even greater force in the situation of a *Glomar* response, where providing additional specificity could give rise to the harm that the FOIA exemption is designed to prevent.

For all of these reasons, the Court finds, based upon its review of both the public and the classified declarations, that the FBI has supplied sufficient information to support its claim that revealing whether or not records exist "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A); *see also CREW*, 746 F.3d at 1096.  "Exemption 7(A) reflects Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'"  *CREW*, 746 F.3d at 1096, quoting *Robbins Tire & Rubber Co.*, 437 U.S. at 224.  However, even if FOIA Exemption 7(A) does not justify defendant's *Glomar* response, Exemption 7(E) does.

## B.      Exemption 7(E)

FOIA Exemption 7(E) protects law enforcement records from disclosure "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The D.C. Circuit has explained: "Exemption 7(E) sets a relatively low bar for the agency to justify withholding:  'Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (second alteration in original), quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).

The FBI's justifications under FOIA Exemption 7(E) are similar to those invoked under Exemption 7(A).  Here, the FBI's declarant avers:

> While the FBI's use of aerial surveillance is well-known, the specific details regarding its aircraft and the circumstances in which they are employed

> (such how, where, and under what condition they are deployed), is not generally known. . . . Confirming the existence of responsive records and thus, the ownership of specific aircraft is tantamount to publicly acknowledging the FBI's investigative interest in a particular geographic area or flight pattern.

First Hardy Decl. ¶ 22.  The FBI asserts that this information in turn would "afford criminals and terrorists the opportunity to develop countermeasures to avoid detection and circumvent the law." *Id.*  The FBI warns that although plaintiffs' FOIA request may appear "benign," criminals and terrorists could combine information about certain flights "in a mosaic fashion" to gain an understanding of how this technique is used in certain FBI operations and Field Offices, rendering this investigative technique ineffective.  *Id.* ¶ 23.

Plaintiffs argue that DOJ has failed to establish that merely stating whether the documents exist would disclose law enforcement techniques, and that DOJ has failed to demonstrate that such a disclosure could reasonably be expected to create a risk that people would try to evade the law.  Pls.' Cross-Mot. at 11–13.  They argue that the public is already aware of the law enforcement technique involved, and that therefore, any revelations made in connection with this case would not risk future circumvention of the law.  *Id.*

Plaintiffs point in particular to the FBI's disclosures following an ACLU FOIA request for records related to surveillance flights over Baltimore, Maryland in May 2015.  Pls.' Cross-Mot. 5–6, 13.  As part of that separate FOIA request, the FBI released flight logs and evidence logs with redacted tail numbers for surveillance flights over Baltimore between April 29 and May 3, 2015.  *Id.* at 6, 12; Redacted Flight Logs and Evidence Logs, Ex. 21 to Pls.' Cross-Mot. [Dkt. # 12-23] ("ACLU FOIA Production").  Plaintiffs also argue that news reports have linked certain front companies to the FBI, and that public Federal Aviation Administration ("FAA") records show that

planes belonging to those companies are outfitted with FBI surveillance equipment, which again disproves the risk of circumvention.  Pls.' Cross-Mot. at 13.

The FBI declarant has explained why the agency's general disclosures to the ACLU did not eliminate the risk of circumvention of law enforcement techniques posed by confirming the existence of records responsive to plaintiffs' particular request.

> The FBI was able to release flight and evidence logs in the ACLU case without incurring law enforcement circumvention harms because ACLU's request did not connect certain investigative activities to specific aircraft. . . . To acknowledge the existence of records would confirm FBI ownership of one or more aircraft as identified in Plaintiffs' request as well as provide information on the level of FBI surveillance activity in various locations. This information would have a devastating impact on pending investigations as well as invalidate the use of that aircraft in present and future covert operations.

Second Hardy Decl. ¶ 11.  The FBI also emphasized that any speculation in the news about front companies tied to the FBI is not the same as the agency itself acknowledging the ownership of specific surveillance aircraft, which it has not done.  *Id.* ¶ 12.

The Court agrees with the agency.  Public awareness that the FBI uses airplanes, or even, press speculation that certain planes are FBI planes, is not the same as, and does not give rise to the same risk as, the FBI's own confirmation of its use of specific aircraft, and that admission would be inherent in confirming the existence of records responsive to plaintiffs' request.  The declarations provided by the FBI "demonstrate logically" why confirming the existence of responsive records poses a risk of circumvention of the law, *Blackwell,* 646 F.3d at 42, and when the Court also considers the presumption of good faith to be accorded to the FBI's assessment of the impact on law enforcement, *SafeCard Servs., Inc.*, 926 F.2d at 1200, the Court finds, based upon its public and classified declarations, that the FBI has plainly established the applicability of Exemption 7(E).

## II.     The government did not waive its *Glomar* response.

In addition to attacking the applicability of the FOIA exemptions, plaintiffs also contend that the agency waived its right to invoke a *Glomar* response because it made prior official acknowledgments of the existence of responsive records.  Pls.' Cross-Mot. 11–14.

It is well established that a FOIA plaintiff may compel disclosure of information "even over an agency's otherwise valid exemption claim" if the government previously "officially acknowledged" the information.  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620 (D.C. Cir. 2011) ("*ACLU I*").  The rationale behind the doctrine is that once information has become public, any harm the agency fears from disclosure has already been sustained.  *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,* 169 F.3d 16, 19 (D.C. Cir. 1999).  This is commonly referred to as an "official acknowledgement" challenge or the "public domain exception."  *See ACLU v. CIA,* 710 F.3d 422, 426–27 (D.C. Cir. 2013) (using the terms interchangeably) ("*ACLU II*").

While "an agency bears the burden of proving that a FOIA exemption applies . . . , a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld."  *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993); *see also Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (same).

The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  Information is officially acknowledged by an agency where:  (1) "the information requested [is] as specific as the information previously released," (2) the requested information "match[es] the information previously disclosed," and (3) the requested information was already "made public through an official and documented disclosure."  *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

13

In *Glomar* cases, a plaintiff need not show that that the contents of the requested records have been disclosed; rather, consistent with the nature of the exemption being invoked, the plaintiff must establish that the agency has previously acknowledged the fact of the *existence* of responsive records. *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012).

The D.C. Circuit has articulated the official acknowledgment test in *Glomar* cases as follows:

> [I]f the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue – the existence of records – and the specific request for that information.

*Wolf*, 473 F.3d at 379 (emphasis in original). This standard has been reaffirmed by the D.C. Circuit in subsequent *Glomar* cases. *See Moore*, 666 F.3d at 1333 (holding that a plaintiff must "pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency"); *see also Mobley*, 806 F.3d at 583 (re-stating the three-part *Fitzgibbon* official acknowledgment test).

The D.C. Circuit has repeatedly emphasized the importance of applying this test narrowly, because "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption." *Wolf,* 473 F.3d at 378, citing *Fitzgibbon,* 911 F.2d. at 766. Therefore, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (emphasis in original).

Moreover, as is particularly relevant to this case, the prior disclosure must originate from the agency itself, as opposed to "another, unrelated agency." *ACLU II*, 710 F.3d at 429 n.7. "Disclosure by one federal agency does not waive another agency's right to assert a FOIA

exemption." *Mobley*, 806 F.3d at 583; *see also Frugone v. CIA,* 169 F.3d 772, 774–75 (D.C. Cir. 1999) (upholding the CIA's *Glomar* response despite official disclosure of the same information by the Office of Personnel Management).   However, prior disclosures "made by an authorized representative of the agency's parent" can trigger a waiver.   *ACLU II*, 710 F.3d at 429 n.7.   The press and other non-official sources cannot waive the government's right to invoke a *Glomar* response.   *See Fitzgibbon*, 911 F.2d at 765.

Applying these requirements to the present case, to overcome defendant's *Glomar* response, plaintiffs must therefore point to a record in the public domain in which the FBI, or a related agency within DOJ,[5] acknowledged the existence of "flight logs" and "evidence logs" in connection with the specific twenty-seven planes listed in the FOIA request from August 15, 2015 through the present.   *See* FOIA Request.   Based on the Court's review of the full record, plaintiffs have not met this burden.

### A.    Prior FBI Disclosures

Plaintiffs rely on the FBI's prior disclosures to the ACLU to argue that the agency already officially acknowledged the existence of records responsive to its request.   Pls.' Cross-Mot. at 12; Pls.' Cross-Reply at 5.[6]   The FBI maintains that those disclosures did not waive its right to invoke a *Glomar* response in this case because it has "never publicly confirmed nor denied ownership of [the aircraft identified in plaintiffs' FOIA request] and as a matter of policy, the FBI does not publicly acknowledge specific aircraft used in aerial surveillance."   First Hardy Decl. ¶ 13.   And

---

5       *See, e.g.*, *Marino*, 685 F.3d at 1082 (holding that a prior disclosure by a federal prosecutor in court waived the DEA's *Glomar* response because the federal prosecutor and the DEA are both part of the DOJ).

6       The ACLU's request sought in relevant part "[a]ll records listing, logging, or describing surveillance or monitoring flights over the greater Baltimore area from April 1, 2015, to the present."   Ex. 19 to Decl. of Peter Aldhous [Dkt. # 12-21] ("ACLU Request") at 3.

it reiterates that the "FBI has not released specific information regarding tail numbers, or the flight and evidence logs associated with specific aircraft." *Id.* ¶ 19.

To further bolster their official acknowledgment challenge, plaintiffs make numerous references throughout their pleadings to FBI statements that generally acknowledge the existence of the aerial surveillance program. Pls.' Mot. at 1–2. For example, plaintiffs' complaint and opening brief point to testimony from the former director of the FBI, James Comey, in 2015 before the Committee on the Judiciary of the U.S. House of Representatives, confirming that the agency uses aircraft in "predicated investigations to conduct surveillance of people who are under investigation." Compl. ¶ 8; Pls.' Cross-Mot. at 2.[7] In that same testimony Comey also confirmed that the FBI assisted local law enforcement with aerial surveillance in Baltimore, Maryland and Ferguson, Missouri during protests and riots. *Id*.

Since it is apparent that there has been some type of public, official acknowledgement from the FBI regarding the existence of the aerial surveillance program, the operative question is whether the information acknowledged "matches the plaintiff[s'] request." *Moore*, 666 F.3d at 1333.

The Court has reviewed the previously disclosed records from the ACLU's 2015 FOIA request, and it did not find a single reference to a tail number that would indicate that there are flight logs and evidence logs for the particular twenty-seven aircraft identified in plaintiffs' FOIA request. *See* ACLU FOIA Production. As the D.C. Circuit has held, an agency's "official acknowledgement waiver" extends only to the particular records it has acknowledged, not the

---

7    Testimony available at https://judiciary.house.gov/wp-content/uploads/2015/10/114-55_97262.pdf.

entire class of records a FOIA requester seeks. *Wolf*, 473 F.3d at 379.[8]  So it is simply not enough

to point to "similar" flight logs or evidence logs; to overcome the government's *Glomar* response,

plaintiffs must point to records that acknowledge the existence of flight logs and evidence logs

tied to the "*specific*" aircraft identified in plaintiffs' request.  *Id.* at 378 (emphasis in original).

Disclosing this particular information would substantially increase the risk of harm that could flow

from a response to the FOIA request.

Comey's testimony is even less of a match to the information sought.  His testimony merely

acknowledges the existence of surveillance aircraft and two instances of its use; he does not

mention specific aircraft tail numbers.  A prior agency statement that "provide[s] only the most

general outline" of an intelligence effort does not waive the right to withhold records that provide

"a far more precise idea" of the effort.  *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir.

1983).

## B.      Non-FBI Disclosures

Plaintiffs also argue that no official acknowledgment from the FBI is necessary because

the existence of the records they seek is a fact that is already in the "public domain" and this alone

constitutes a separate basis to compel disclosure.  Pls.' Cross Mot. at 13.  This is not a correct

statement of law.  As explained earlier, the "public domain" and "official acknowledgment" test

---

8       One of the aircraft listed in the ACLU's 2015 FOIA request is also listed in plaintiffs'
request – N539MY.  *See* ACLU Request at 2.  But when the FBI produced the flight logs and
evidence logs to the ACLU, it redacted all of the tail numbers.  *See* ACLU FOIA Production.  So
it is impossible to know whether the agency acknowledged the existence of records related to
aircraft N539MY or some other aircraft since there was at least one other aircraft specifically
identified in the request, which also sought "*[a]ll* records listing, logging, or describing
surveillance or monitoring flights over the greater Baltimore area from April 1, 2015, to the
present."  ACLU Request at 3 (emphasis added).

are one in the same, and it requires that the first disclosure originate from the agency from which the documents are sought or a related parent agency.  *ACLU II*, 710 F.3d at 426–27, 429 n.7.

So although plaintiffs have woven together FAA records, press reports, and other non-government records to purportedly show that the twenty-seven planes they identified belong to the FBI, their reliance on these records is to no avail because these are not official disclosures from the FBI or a related parent agency.  *See Frugone*, 169 F.3d at 774–75.[9]

## CONCLUSION

The Court finds that defendant has justified its *Glomar* response under FOIA Exemption 7(A) and 7(E) and it has not waived these exemptions through a prior official acknowledgment. Accordingly, it will grant defendant's motion for summary judgment, and deny plaintiffs' cross-motion.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 26, 2018

---

9     Plaintiffs cite to *ACLU*, 710 F.3d at 426 and *Marino*, 685 F.3d at 1081 in support of their position that it is enough for the information to be in the public domain to defeat a *Glomar* response. Pls.' Cross-Reply at 4–5.  But these cases support the opposite conclusion.  In both cases the prior acknowledgment came from the agency itself or officials acting with authority from a "parent agency."